Approved: _____  **18 MAG 10664**
ANDREW K. CHAN
Assistant United States Attorney

Before:  THE HONORABLE DEBRA FREEMAN
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - - X
                                       :   SEALED COMPLAINT
UNITED STATES OF AMERICA               :
                                       :   Violation of
   - v. -                              :   18 U.S.C. § 1349
                                       :
JENNIE PIZARRO,                        :   COUNTY OF OFFENSE:
                                       :   NEW YORK and BRONX
       Defendant.                      :
                                       :
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

   DANIEL ALESSANDRINO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Conspiracy to Commit Bank Fraud)

   1.   From at least in or around April 2017 up to and including in or around June 2017, in the Southern District of New York and elsewhere, JENNIE PIZARRO, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

   2.   It was a part and object of the conspiracy that JENNIE PIZARRO, the defendant, and others known and unknown, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of

false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3.   I am a Detective with the NYPD. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### OVERVIEW OF THE SCHEME TO DEFRAUD

4.   Based on my review of bank records, law enforcement records, and my conversations with law enforcement officers and representatives of a bank ("Bank-1"),[1] and as set forth below, I believe that JENNIE PIZARRO, the defendant, participated in the following scheme to defraud Bank-1:

a.   Between at least in or around April 2017 and in or around June 2017, approximately 66 corporate bank accounts were opened at various Bank-1 branches (the "Scheme Accounts").

b.   Shortly after each of the Scheme Accounts was opened, one or more checks were deposited into each of the Scheme Accounts (the "Stolen Checks"). In each instance, the name associated with the Scheme Accounts was similar but not identical to the name of the payee on the Stolen Checks. For example, a letter or word might be slightly different between the name of the payee and the name associated with the bank account.

c.   Shortly after each of the Stolen Checks was deposited into the Scheme Accounts, large amounts of cash were

---

[1] Based on my training, experience, and conversations with representatives of Bank-1, I know that the deposits at Bank-1 are insured by the Federal Deposit Insurance Corporation.

2

withdrawn from the Scheme Accounts at ATMs or at one or more casinos.[2] The Stolen Checks were then rejected by Bank-1 or reported stolen, leaving each of the Scheme Accounts with a negative balance.

        d.    As further discussed below, bank records and surveillance video show that PIZARRO opened one of the Scheme Accounts ("Scheme Account-1"). After a stolen check for $100,000 was deposited into Scheme Account-1, large amounts of cash were withdrawn from Scheme Account-1 at casinos. Additionally, a debit card associated with Scheme Account-1 was used to make online purchases, including two purchases at different merchants for luxury handbags placed in the name of PIZARRO and shipped to PIZARRO's address. Cellphones used by a co-conspirator not identified as a defendant herein (the "CC-1 Cellphone") also placed calls to check on the status of the Scheme Accounts shortly after the Stolen Checks were deposited. A cellphone used by PIZARRO (the "PIZARRO Cellphone") exchanged numerous communications with the CC-1 Cellphone during the timeframe when this scheme was conducted.

        e.    The total value of the Stolen Checks deposited into the Scheme Accounts is approximately $2 million.

### THE INVOLVEMENT OF JENNIE PIZARRO IN THE SCHEME

    2.    Based on my review of Bank-1 records, Bank-1 surveillance video, and my conversations with law enforcement officers and Bank-1 representatives, I have learned the following among other things:

        a.    On or about April 13, 2017, a corporate bank account ("Scheme Account-1") was opened at a Bank-1 branch in Long Island in the name of a company with a very similar name to a real estate management company ("Victim-1"). Based on surveillance video, Scheme Account-1 was opened by JENNIE PIZARRO, the defendant. As part of the process for opening Scheme Account-1, PIZARRO signed a document indicating that

---

[2] Based on my training and experience, I know that individuals involved in bank fraud frequently withdraw the proceeds of bank fraud at casinos. Casinos frequently allow individuals to withdraw larger amounts of money from their bank accounts than at ATMs. Additionally, it is less suspicious for individuals involved in bank fraud to withdraw large amounts of money from casinos than at bank branches, where bank employees can look at an account history before allowing cash to be withdrawn.

3

PIZARRO was the "President" of the company with a very similar name to Victim-1 and also listed PIZARRO's address as a location in the Bronx (the "PIZARRO Address"). Later that day, a check for $100,000 to be paid to Victim-1 (the "Victim-1 Check") was deposited by PIZARRO into Scheme Account-1.

          b.    Between on or about April 13, 2017 and on or about April 20, 2017, approximately $50,000 was withdrawn from Scheme Account-1 at a casino located in Queens (the "Queens Casino"). Based on my review of records and my conversations with the Queens Casino, I know that the Queens Casino does not allow for large cash withdrawals without additional identification. Additionally, the Queens Casino scans and documents a fingerprint in their records of customers seeking large cash withdrawals.

          c.    On or about April 19, 2017, approximately $1,000 was withdrawn from Scheme Account-1 at an ATM located in the Bronx, New York. Based on my review of surveillance video from this ATM transaction, the withdrawal is made by CC-1, not PIZARRO.

          d.    On or about April 18, 2017, approximately $3,600 was charged at department stores using a debit card associated with Scheme Account-1, including at least two online purchases for luxury handbags valued at $854.56 and $2,389.81. Based on my review of business records, I know that PIZARRO's name, the PIZARRO address, a phone number (the "PIZARRO Cellphone"), and an email account with username "Jenniepizarro1769" were used to make both transactions. The shipping address for both transactions was to PIZARRO at the PIZARRO Address.

          e.    On or about April 20, 2017, Scheme Account-1 was frozen by Bank-1.

          f.    Between on or about April 13, 2017 and on or about April 20, 2017, the CC-1 Cellphone placed approximately 14 phone calls to Bank-1 to check on the status of Scheme Account-1.

### **PIZARRO COMMUNICATES WITH THE CC-1 CELLPHONE**

          3.    Based on my review of law enforcement records and phone records, I have learned the following, among other things:

4

    a. Between in or around April 2017 and in or around June 2017—the time frame when the scheme described above was being executed—the CC-1 Cellphone called phone numbers associated with Bank-1 approximately 61 times and a phone number associated with a casino on one occasion.

    b. During that same timeframe, the PIZARRO Cellphone and the CC-1 Cellphone exchanged approximately 182 communications.

    4. Based on my review of law enforcement records, I know that JENNIE PIZARRO, the defendant, has previously provided the PIZARRO Cellphone and the PIZARRO Address to law enforcement as PIZARRO's contact information.

    WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JENNIE PIZARRO, the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

_____
DANIEL ALESSANDRINO
Detective
New York City Police Department


Sworn to before me this
17th day of December, 2018

_____
THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5